UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSE F. RODRIGUEZ VARGAS,

    Defendant.

Criminal No. 14-198 (JAF)

**MEMORANDUM OPINION AND ORDER**

In February 2014, a produce clerk at the Econo Supermarket in Carolina, Puerto Rico, noticed José Rodríguez-Vargas using his cell phone to photograph a minor female. The clerk notified the minor and her family and then reported the incident to the grocery store's security guard, Yesenia Benítez-Osorio. Benítez-Osorio called the Puerto Rico Police Department.

When Rodríguez-Vargas finished his grocery shopping, two officers from the Puerto Rico Police Department were waiting outside the entrance to the grocery store. Officers Marrero and Rivera asked Rodríguez-Vargas if he would step ten steps to the side and speak to them about his furtive photography. At first, Rodríguez-Vargas denied having taken any pictures of the minor female. After the officers made it clear to Rodríguez-Vargas that the parents of the minor female only wished for him to delete the photographs, Rodríguez-Vargas admitted that he had in fact taken a few photographs of the minor female while she was shopping for produce with her parents. He agreed to

delete the images. With Officers Marrero and Rivera standing beside him, Rodríguez-Vargas brought up the images on his phone. He deleted each photograph, one after the other. The next photographs to appear on his display screen were pornographic images. Rodríguez-Vargas hurriedly deleted them, too. Officer Marrero told Rodríguez-Vargas to stop, but Rodríguez-Vargas continued deleting pornographic images. Officer Marrero told Rodríguez-Vargas to stop again and demanded that he hand over his phone. Rodríguez-Vargas complied. Officer Marrero scrolled through a sequence of pornographic images stored on Rodríguez-Vargas' phone. Within the sequence of adult pornography were several images that appeared to Officer Marrero to be child pornography. The court has seen some of the images and they are, indeed, child pornography.

Officers Marrero and Rivera read Rodríguez-Vargas his Miranda rights. They then contacted their station to request assistance from the Puerto Rico Police Department Child Victim's Unit. Eventually, Officers Marrero and Rivera were instructed to contact the U.S. Department of Homeland Security Investigations. Nearly an hour later, Special Agents Duncan Campbell and Pablo Llabre, accompanied by Digital Forensic Agent Carlos Adorno, arrived at the grocery store. Officer Rivera recounted the incident to Campbell and Llabre. Special Agent Campbell read Rodríguez-Vargas his Miranda rights. Special Agent Campbell then asked Rodríguez-Vargas to sign a waiver and consent form. Rodríguez-Vargas signed both documents without objections.

After receiving Rodríguez-Vargas' consent, Adorno searched the cell phone—identifying at least fifteen images of child pornography. Special Agent Campbell relayed

the facts of the incident to Assistant United States Attorney Marshal Morgan. Morgan authorized Rodríguez-Vargas' arrest.

After being transported by the special agents to his home, Rodríguez-Vargas signed a written consent form authorizing the special agents to search his home computers.

Rodríguez-Vargas moves to suppress all evidence gained as a result of his initial detention. (Docket No. 36.) The government responds. (Docket No. 41.) On June 12, 2014, we held a hearing on the motion. At the suppression hearing, Benítez-Osorio, Officer Marrero, Special Agent Campbell, and Rodríguez-Vargas testified. The accounts given of the stop and detention conflicted on many points, including its length, the attendant conditions, and the dialogue exchanged between Officers Marrero and Rivera and Rodríguez-Vargas. We found only the testimony of the officers to be credible. We determined, based on Rodríguez-Vargas' demeanor and his wildly inconsistent account of his detention, that he was not credible.

## II.

### **Legal Standard**

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, police seizures must be supported by probable cause. Martinez-Rodriguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010). In limited circumstances, a lower standard, reasonable suspicion, may justify a police seizure. United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008) (reasonable

suspicion requires more than a mere hunch but less than probable cause); see also United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001) ("Reasonable suspicion is an intermediate standard that defies precise definition; its existence must be determined case by case, and that determination entails broad-based consideration of all the attendant circumstances."). Because "[r]easonable suspicion is a less demanding standard than probable cause[,] ... [it] can arise from information that is less reliable...." Alabama v. White, 496 U.S. 325, 330 (1990). An investigative stop based on reasonable suspicion will withstand constitutional scrutiny when the intrusion is limited and reasonably related in scope and duration to the circumstances that justified the stop in the first place. United States v. Sharpe, 470 U.S. 675, 685–86 (1985). A search, however, is not unreasonable merely because officers did not use the "least intrusive" means. City of Ontario v. Quon, 560 U.S. 746, 763-64 (2010).

Suppression of evidence is only appropriate when evidence is obtained in violation of a defendant's constitutional rights. See Mapp v. Ohio, 367 U.S. 643, 81 (1961). A person who claims to have been aggrieved of a constitutional violation bears the initial burden of production and persuasion to suppress evidence. Jarabo v. United States, 158 F.2d 509, 513 (1st Cir. 1946) (burden of proving that evidence sought to be introduced has been unlawfully obtained rests upon party objecting to it); Samson v. United States, 26 F.2d 769 (1st Cir. 1928) (movant to suppress evidence seized has burden of establishing essential facts). Once the defendant has made basis for his motion, the government then has the burden of demonstrating that there was not a constitutional violation. See United States v. Matlock, 415 U.S. 164, 177 n.14 (1974); Colorado v.

Connelly, 479 U.S. 157, 168 (1986).  The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.  Matlock, 415 U.S. at 177 n.14.

### III.

### Discussion

Rodríguez-Vargas argues that the Puerto Rico Police Department lacked reasonable suspicion to search his cellular phone outside the grocery store.  We disagree.

There are certain encounters between police and citizens, called Terry stops, that fall short of a full arrest.  Schubert v. City of Springfield, 589 F.3d 496, 501 (1st Cir. 2009).  When conducting a Terry stop, a police officer may briefly detain an individual for questioning if the officer has "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'"  United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)); see also Klaucke v. Daly, 595 F.3d 20, 24 (1st Cir. 2010); United States v. Wright, 582 F.3d 199, 205 (1st Cir. 2009);  United States v. Bullock, 632 F.3d 1004, 1014-15 (7th Cir. 2011) (holding a Terry investigative stop is a brief detention that give officers a chance to verify well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity).

The reasonableness of the stop is based on an objective standard: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  Terry, 392 U.S. at 22.  When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, United States

v. Arvizu, 534 U.S. 266, 273–74 (2002), including the experience of the officer and the behavior of the suspect. Illinois v. Wardlow, 528 U.S. 119, 124–25 (2000) (determination of reasonable suspicion must be based on common-sense judgments and inferences about human behavior). The officer's subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry. United States v. Romain, 393 F.3d 63, 74 (1st Cir. 2004).

Here, we find Officers Marrero and Rivera had reasonable suspicion to detain Rodríguez-Vargas. The officers came at the request of the grocery store's security guard to investigate suspicious behavior involving a minor female. Upon leaving the grocery store, Rodríguez-Vargas agreed to stop and discuss the photos he took of the minor female. As the officers stood alongside him, Rodríguez-Vargas freely showed them the images stored on his cellular phone. After Rodríguez-Vargas deleted these images, the officers were able to see several images of pornography. It was at this point that the officers noted Rodríguez-Vargas' frantic attempts to delete images from his phone without being requested to. Both officers were concerned that Rodríguez-Vargas might be trying to destroy potentially incriminating evidence.

To be sure, each of these facts, considered by itself, might not give rise to reasonable suspicion. Perhaps, Rodríguez-Vargas' decision to linger in the produce aisle and furtively snap photos of a minor female was free of sinister purpose. But this behavior, coupled with his initial denials and then his hurried attempts to delete stored images from his phone, led Officers Marrero and Rivera to suspect something more nefarious was stored on Rodríguez-Vargas' cellular phone. Considering the "totality of

the circumstances," then, we conclude that there was reasonable suspicion for the officers to view the pictures on Rodríguez-Vargas' cell phone. See United States v. Sokolow, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct…. But we think taken together they amount to reasonable suspicion."); United States v. Stanley, 915 F.2d 54, 57 (1st Cir. 1990) (certain behavior in isolation may have an innocent explanation; yet, that same behavior may give rise to reasonable suspicion when viewed in the context of other factors at play).

Rodríguez-Vargas also argues that the length of his detention violated his constitutional rights.

The Supreme Court has provided some abstract guidance, noting that "[i]n assessing whether a [stop] is too long in duration ..., we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly...." United States v. Sharpe, 470 U.S. 675, 686, (1985). In other words, the overarching consideration is *the officer's diligence*—i.e., his "persevering" or "devoted ... application to accomplish [the] undertaking" of ascertaining whether the suspected violation occurred...." United States v. Pontoo, 666 F.3d 20, 31 (1st Cir. 2011) (appropriate length of a Terry stop is gauged by whether the officer diligently pursued a reasonable investigative approach calculated to ensure officer safety and, at the same time, confirm or dispel his suspicions). The question of an officer's conduct, as with so much else in the Fourth Amendment context, is properly evaluated under the totality of the circumstances. United States v. Chaney, 647 F.3d 401, 409 (1st Cir. 2011) (actions undertaken by officers following a stop must be reasonably

responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officers during the stop).

Here, a few moments passed between the stop and the discovery of the child pornography. At the point of discovery, reasonable suspicion to stop Rodríguez-Vargas for his bizarre behavior with the minor female inside of the grocery store had transformed into probable cause to arrest him for possession of child pornography. The remainder of Rodríguez-Vargas' detention in front of the grocery store was simply spent contacting and waiting on the appropriate authorities to respond. Our evaluation of the totality of the circumstances indicates that there was no unnecessary delay or any violation of Rodríguez-Vargas' constitutional rights.

Because we conclude that the initial Terry stop was supported by reasonable suspicion, and because the officers had reasonable suspicion to justify viewing the pictures on Rodríguez-Vargas' cell phone, we also hold that the subsequent review of computer and storage devices was not "fruit of the poisonous tree."[1]

---

[1] Finally, we recognize that the Supreme Court is likely to provide guidance on this question soon, but given trial scheduling, we are unable to wait. In Riley v. California, 2013 WL 475242, (Cal. May 1, 2013), cert. granted, No. 13-132 (U.S. argued Apr. 9, 2014), and United States v. Wurie, 724 F.3d 255 (1st Cir. 2013), cert. granted, No. 13-212 (U.S. argued Apr. 29, 2014), the Court has been asked to articulate a new rule for restricting the searches of cell phones incident to arrest because of the nature and volume of data they may hold. While it is our understanding that the facts of these two cases differ from our own—Rodríguez-Vargas ultimately gave his free consent to Special Agents to search his electronic devices, including his cellular phone—they are similar enough that the Supreme Court's decisions may have some applicability to the facts of this case. While technological advance in cellular communication has been rapid and vast, any new rules handed down by the Supreme Court will be considered at a later date.

## IV.

### Conclusion

For the foregoing reasons, the defendant's motion to suppress, (Docket No. 36), was **DENIED** in open court.

**Trial shall be held on June 25, 2014, at 9:00 A.M.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 18th day of June, 2014.

                                                                S/José Antonio Fusté
                                                                JOSE ANTONIO FUSTE
                                                                U. S. DISTRICT JUDGE